IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUNNIE FREEMAN and
JOSEPH FREEMAN,

        Plaintiffs,

v.                              No. CIV 96-1516 BB/JHG

City of Albuquerque Police Officers,
ARTHUR ACOSTA and DARREN
WALTER, in their individual capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER
AMENDING JUDGMENT TO GRANT
ATTORNEYS' FEES**

THIS MATTER is before the Court on the *Plaintiff's Application for Attorneys' Fees and Costs* [#93], and the Court having considered the briefs and oral argument of counsel on April 29, 1998, and being otherwise informed, FINDS the application is well taken and should be Granted In Part.

**Discussion**

This is a civil rights case brought by Plaintiffs Sunnie and Joseph Freeman for deprivation of their constitutional rights pursuant to 42 U.S.C. § 1983 and § 1988, alleging violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution. Plaintiffs also sought damages for tortious conduct on the part of Defendants, under the New Mexico Tort Claims Act, § 41-4-1 *et seq.,* NMSA 1978 (Repl.

Pamp. 1996).  All of Plaintiffs' claims arose out of a common core of facts involving their arrest following an investigation by the Defendant Albuquerque Police Officers of a loud pool party at Plaintiffs' apartment complex.  Plaintiffs' civil rights claims were tried before the Court from December 1-5, 1997.  On December 5, the jury returned a verdict finding that Defendants Acosta and Walter arrested Sunnie Freeman without probable cause and awarding her $902.11 for false arrest.  (This was the exact amount of Sunnie Freeman's medical costs.)  On December 18, 1997, the Court entered a judgment on the jury verdict.  Ms. Freeman now requests costs in the amount of $3, 247.60 and attorneys' fees of $55,470.82.

Title 42 U.S.C. § 1988(b) provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  A plaintiff who "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit" is a "prevailing party."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).  In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court recognized that the "prevailing party inquiry does not turn on the magnitude of the relief obtained" and that the "'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry." *Id.* at 114.  It must thus be recognized Sunnie Freeman is a prevailing party and entitled to a reasonable amount for attorneys' fees and costs.

"The starting point for determining a reasonable attorneys' fee in a civil rights action is the lodestar, which is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  1 ROBERT L. ROSSI, ATTORNEYS' FEES § 10:24 at 661-62 (Lawyers Coop. 1995).  In the present case, both Plaintiffs' counsel, Shannon Oliver and Carolyn Nichols, request $125.00 per hour.  By way of affidavit, Ms. Oliver asserts she received her law degree from the University of New Mexico in 1994 and worked briefly for the public defender in both Alaska and New Mexico before going into private practice.  Ms. Nichols graduated from the Yale Law School in 1993 and was admitted to the New Mexico Bar the same year.  Both concede they have limited experience in federal court and that they rarely charge clients on an hourly basis.  Defense counsel concedes that a "$110.00 rate is reasonable here."  (Mem. Defs. Opp'n at 18.)   While both counsel aver that they have billed at rates up to $200.00, this Court has familiarity with the rates presented by a wide range of local counsel in fee petition cases and is persuaded a rate of $115.00 is fair compensation for counsel who both approached trial with less than five years experience.

The other factor in a lodestar calculation is the appropriate number of hours reasonably expended.  In recognition of the fact one client did not receive any award and the other client received an award on only one claim, "plaintiff reduced all hours that they could not separate by a flat ten percent across the board, reducing other hours by twenty percent or more, eliminating some work entirely."  (Pls.' Application at 10.)

3

After such adjustments, Ms. Oliver seeks compensation for 94.5 hours and Ms. Nichols requests remuneration for 270 hours. At oral argument, defense counsel conceded 289 hours were reasonable.

In addition to the traditional lodestar calculation, the Tenth Circuit has recommended that the trial court consider the factors originally set out in *Johnson v. Georgia Highway Express Co.*, 488 F.2d 714 (5th Cir. 1974). *See In re Kansas Congressional Dist. Reapportionment Cases*, 745 F.2d 610 (10th Cir. 1984); *Battle v. Anderson*, 614 F.2d 251 (10th Cir. 1980). "[W]hile these factors are useful, some are seldom applicable, and none is self-actuating." *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). At oral argument, this Court expressly invited counsel to address the *Johnson* factors.[1]

The initial *Johnson* factor, the time and labor required, is addressed in the previous lodestar analysis. The second factor, the novelty and difficulty of the question, is related to the third, the skill requisite to perform the task. Both sides concede there was nothing unique or novel and that Plaintiff's counsel were sufficiently skilled to present the case to the jury. Plaintiff's counsel cannot point to any other employment they rejected, but generally argue they are always busy and could not work on other cases while they were

---

[1] The twelve factors are: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; the time limitations imposed by the client or circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; an awards in similar cases.

working on this case. Customary fees were addressed under the lodestar and Plaintiff's counsel stated they handled the case on a contingent basis. As to the seventh *Johnson* factor, counsel indicated no time limitations were imposed by the client or circumstances.

Three of the last four *Johnson* factors are critical to the analysis of the present case. The eighth factor, the amount involved and the results obtained, is pivotal. Plaintiff's counsel argue, "Vindication of the constitutional right to be free from illegal search and seizure is a significant legal issue." (Pl.'s Application at 4.) In support of this position, they cite two local editorial columns referring to this verdict as supporting the need for a civilian review board for the local police. In response, defense counsel argues,

> "Contrary to plaintiffs' assertion, their cases are of minimal public importance and the fact that counsel attaches two newspaper articles is not particularly enlightening. Those articles deal with the propriety of having police officers investigate police officers. While the newspaper reporter uses this case to press his point, his point is largely irrelevant to the issues before the Court.

(Mem. Opp'n at 25.)  As is frequently the situation, the truth lies somewhere in between.

Certainly in this day of home video cameras and "eye in the sky" news coverage, police brutality is a high profile issue. It is also an issue that merits judicial scrutiny and attorneys' fees in appropriate cases. *Nephew v. City of Aurora*, 830 F.2d 1547 (10th Cir. 1987); *Anthony v. Baker*, 767 F.2d 657 (10th Cir. 1985); *cf. Houston v. Reich*, 932 F.2d

5

883 (10th Cir. 1991) (City which had been dismissed could not be assessed attorney's fees for police misconduct).

Conversely, it is certainly significant that the jury awarded Joseph Freeman nothing and Sunnie Freeman nothing on four of her five theories of recovery. Moreover, on the one theory on which Sunnie was successful, the jury awarded only her fairly nominal medical expenses of $902.11, and no punitive damages. The jury was obviously not enraged by Defendants' conduct or motivated to institute any significant change at City Hall. If not the most important, the level of success is certainly one of the major factors to be considered on any request for attorneys' fees. *Farrar*, 506 U.S. at 103; *City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring). While Plaintiff's counsel should not be punished for aiming high, then, their lack of success is definitely a major factor to be considered when setting fees. *Hensley* at 435.

The ninth *Johnson* factor, the undesirability of the case, is also a subject of some debate in the case at bar. Plaintiff argues:

> If courts began to reject attorneys' fees requests for fee awards in small verdict cases, then it would be impossible for a competent attorney to take on such a case. The reasonable expectation of a fee award makes the day-to-day enforcement of civil rights for poor people possible.

(Pls.' Application at 6.) Defendants respond that they believe that in light of cases such as the Rodney King matter, police brutality cases are fairly fashionable for the plaintiff's civil rights bar." (Mem. Opp'n at 20.) Again, both positions have merit, but it is the

6

Court's observation that statistically civil rights claims against the police have risen throughout the 1990s in this district.

Finally, the Court must consider the issue of awards in similar cases. The parties have bombarded the Court with examples of awards in "similar cases." Not surprisingly, even within the Circuit, the awards vary so widely they all but defy comparison on a raw numbers basis. *See Northington v. Marin*, 102 F.3d 1564 (10th Cir. 1996) (attorney's fees of $93,650 on verdict of $5,000); *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996) (attorney's fees of $324,894 on award of $72,822); *Neece*, 41 F.3d at 1396 (attorney's fees of $68,884 on judgment of $1,780 for violation of financial privacy act); *Koopman*, 41 F.3d at 1417 ($1 verdict – reversal where no fees awarded). Rather than deriving much guidance from such precedent, the Court concludes these cases stand generally in support of the proposition that an award of attorney's fees will be reversed only for an abuse of discretion.

The most analogous Tenth Circuit precedent is *Nephew v. City of Aurora, supra.* In that case, plaintiffs brought suit against two Aurora police officers alleging they had been assaulted, battered, and subjected to false arrest. Plaintiffs alleged these actions were taken in violation of their civil rights and pursuant to discriminatory policies against blacks sanctioned by various city officials. The jury awarded plaintiffs $1.00. Plaintiffs requested attorneys' fees and, after various adjustments, the district court awarded $12,500.00. A divided panel of the Court of Appeals held that when a plaintiff receives

7

only nominal damages, the award must be discounted to compensate for limited success. In light of *City of Riverside v. Rivera*, 477 U.S. at 561, the Tenth Circuit granted rehearing en banc. The Court was again sharply divided. The majority affirmed the district court recognizing that Supreme Court opinions, including *Rivera*, had distinguished civil rights actions from private tort litigation "because the civil rights plaintiff also vindicates 'important civil and constitutional rights that cannot be valued in monetary terms.'" 830 F.2d at 1549, quoting *Rivera*, 477 U.S. at 574. The majority also recognized that "vindication often can include important social benefits that are not reflected in nominal damages" so that application of a strict proportionality would "undermine the legislative intent underlying the Act." *Id.* The dissent recognized the purposes of the goal of the Civil Rights Act but pointed out the district court had given no real consideration to the "success achieved factor." 830 F.2d at 1553. *See also Milton v. Des Moines, Iowa*, 47 F.3d 944 (8th Cir.), *cert. denied*, 516 U.S. 824 (1995) (denial of fees when $1 awarded against police).

As previously noted, both views expressed in *Nephew* appear to require application in the present context.[2] Success cannot be the only, or even necessarily the dominant

---

[2] This Court takes note of Defendants' argument that *Nephew* predates *Farrar*, 506 U.S. at 103. While *Farrar* could have influenced certain members of the Tenth Circuit to change their respective positions, the underlying rationales of both the majority and dissent appear to survive *Farrar* and the Tenth Circuit has continued to cite *Nephew* since *Farrar*. *See, e.g., Koopman v. Water Dist. No. 1 of Johnson County, Kan.*, 41 F.3d 1417, 1421(10th Cir. 1994); *Neece v. Internal Revenue Serv.*, 41 F.3d 1396, 1402 (10th Cir. 1994); *Hall v. Western Prod. Co.*, 988 F.2d 1050, 1057 (10th Cir. 1993).

8

factor, but it must be considered and weighed according to the facts of each case. The jury in the present case obviously felt Sunnie Freeman had been unjustly arrested but the verdict hardly conveys the message Defendants were renegades in need of serious reprimand or that arrest practices must be completely overhauled. Conversely, Plaintiff's counsel provide a community service when they expose even relatively minor abuses of a citizen's rights.

After considering the *Johnson* factors, then, the Court has reviewed Plaintiff's bills and made further adjustments to the hours submitted to eliminate duplicate and excessive billing. The 295.3 hours remaining have been multiplied by $115 to achieve a figure of $33,959.50. The Court then attempted to find a figure which would fairly represent the fact that Sunnie Freeman prevailed but her financial success was limited. Although somewhat arbitrary, this Court applied a 60% factor to adjust the fees to reflect the sentiment of the jury as mirrored in the success achieved factor. *Compare Allan v. Higgins*, 902 F.2d 682 (8th Cir. 1990) (fee reduced 50% to reflect lack of success); *Zook v. Brown*, 865 F.2d 887 (7th Cir. 1989) (fee reduced 75% due to limited success). A modified judgment awarding Plaintiff's counsel $20,375.00 in fees will thus be entered. *See Loggins v. Delo*, 999 F.2d 364 (8th Cir. 1993) (fee award of $25,000 on damage award of $102.50).

There is no real dispute as to Plaintiff's costs, and reasonable costs are properly awarded. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1208 (10th Cir 1986). Plaintiff will therefore be awarded costs in the amount of $3,247.60.

Plaintiff also claims attorney's fees for D. Rusch Gathings. He handled the criminal representation of the Freemans, and he also sent a tort claims notice to the City on their behalf. Mr. Gathings then pursued settlement negotiations directly with the adjustors for the City's risk management division but without result. He subsequently referred the case to Ms. Nichols.

Plaintiff's request for attorney's fees for Gathings' efforts in the criminal case is clearly without merit. *Webb v. Board of Educ. of Dyer County, Tenn.*, 471 U.S. 234 (1985). *See also Greer v. Holt*, 718 F.2d 206 (6th Cir. 1983); *Venuti v. Riordan*, 702 F.2d 6 (1st Cir. 1983). On the other hand, it is reasonable to compensate Mr. Gathings for his actual work on the civil case. While Mr. Gathings has substantially more experience as a practicing attorney than either Nichols or Oliver, he apparently has limited experience in the area of civil litigation. The Court will therefore compensate his services at the $135.00 per hour that he avers is the low end of his billing rate. Since it is unclear from Gathings' statement exactly which services were directed to the civil action,[3] only those

---

[3] In making the cut between "raw" and "billable" time, hours that are inadequately documented so as to preclude any assessment of their reasonableness are excluded. *See Hensley, supra* at 434 ("[w]here the documentation of hours is inadequate, the district court may reduce the award"). *See also Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3rd Cir. 1983), *cert. denied sub nom.*

obviously for that purpose are included.  Using this method, and again eliminating the duplicative and excessive hours, the Court will award Plaintiff, as Mr. Gathings attorney's fees, the amount of $958.50.

Finally, Plaintiff's counsel maintain they are entitled to fees for time spent in applying for and contesting the amount of attorneys' fees.  "Although some earlier cases had held to the contrary, the federal courts now uniformly interpret 42 U.S.C. § 1988 to permit recovery of compensation for time spent establishing or defending the original entitlement to an attorneys' fee as part of the fee award in civil rights cases."  1 ROBERT L. ROSSI, ATTORNEY'S FEES § 10:28 at 676, citing, *inter alia, Iqbal v. Golf Course Superintendents Ass'n*, 900 F.2d 227 (10th Cir. 1990).  Plaintiff has requested such fees but failed to specify an amount.  When this figure is submitted, Plaintiff's counsel will be awarded a reasonable fee.

### O R D E R

For the reasons stated above, *Plaintiff's Application for Attorneys' Fees and Costs* [#93] is **GRANTED IN PART**.  A modified judgment containing the amount specified herein will issue.

Dated at Albuquerque this 15th day of May, 1998.

                                               */s/ Bruce D. Black*
                                               BRUCE D. BLACK
                                               United States District Judge

Counsel for Plaintiffs:

    Carolyn M. Nichols, Shannon L. Oliver, Albuquerque, NM

Counsel for Defendants:

    Stephen G. French, Albuquerque, NM